# COOS.

## BROWN *v.* MAHURIN.

Money paid on an executory contract may be reclaimed, and the value of goods sold and delivered and of labor performed upon such contract, may be recovered, after the contract has been broken or rescinded by the other party thereto.

One who sold hay and performed labor, under a contract that the same should be paid for in goods from the store of the other party, and afterwards received goods from that store to an amount greater than the value of the hay and labor, but was subsequently compelled to pay for the goods entirely in cash, may recover the value of his hay and labor of the delinquent party.

ASSUMPSIT on an account annexed. The action having been referred to an auditor, at the first hearing before him the parties agreed that he should make a special report of the facts in the case, which he did as follows:

" I find that some time previous to June, 1850, Ephraim H. Mahurin, the father of this defendant, commenced and carried on a small business in trade, in various kinds of goods, at Columbia, and removed it to Stratford about the first of June, 1850 ; occupying a building for his store that belonged to his son, Charles Mahurin. The business was done in the name of Ephraim H. Mahurin, Jr., this defendant, the reason for which was that the father was poor, and probably could not get trusted in his own name. The defendant assented to having it so done, and permitted it to continue for several years, never receiving nor

expecting any benefit from the business; and it was in fact carried on by the father for his own benefit; but the public generally and the plaintiff knew that it was done in the name of the defendant. At length, in 1854, the defendant was called upon by Boston creditors who had furnished goods for said business, and having been sued and made liable for debts of some amount, then put an end to the business, and forbid his father the further use of his name.

From June 9, 1850, to December 5, 1853, the plaintiff traded with the father at said store, and contracted a debt amounting to $21.96. On the 4th of November, 1854, he gave a note for other deal at said store, of that date, for $16, payable on demand, with interest, and running to the defendant. This note was taken by the father.

In August, 1850, the plaintiff delivered the father a load of hay, not weighed, but which was worth six dollars, and he used it for his own purposes. In October, 1850, the plaintiff worked five days in repairing said store, which work was worth five dollars; and in January, 1851, he worked eight days more on said store, which was worth eight dollars. Said hay and labor are charged in the three first items in the account annexed. It was understood and agreed between the father and the plaintiff, that said hay and labor should be paid for in goods; and when the goods were taken they both expected that the same would go in payment or part payment of the goods. On the 11th day of April, 1855, the father sued said account and note in the name of the defendant. The writ was returnable at Coös court of Common Pleas, May term, 1855, when it was entered, and it was continued from term to term to the November term, 1856, just before which term it was audited before B. F. Whidden. In the account sued this plaintiff was credited with five of the above eight days' work, at five dollars. The plaintiff, being upon a journey, was not present at said auditing, but sent coun-

sel to get a continuance, who appeared and made some defence, and required that the above matters should be credited and allowed. This was on the 29th day of October, 1856. At said November term, 1856, a judgment was rendered in favor of this defendant against said plaintiff, for $27 damages on said note, and the balance of the account, the remainder of said hay and labor not having been credited. This judgment the father collected and had, and this defendant never had any benefit of it. There is justly due to this plaintiff, on said three items, a balance of $15.68, casting interest from October 29, 1856, the time when the plaintiff's counsel claimed the allowance of the same before the auditor. I find that the plaintiff never, till after the decision of the aforesaid action, expected to make the defendant chargeable therefor in any way, but as such offset or payment, and my opinion is that the same should be disallowed; but I have stated the facts specially, that the court may correct my decision. The fourth item is disallowed and the last item was withdrawn. In reference to the statute of limitations, I find that the defendant resided in Vermont from September, 1852, to June, 1855, so that the action is not barred."

Upon the auditor's report, the court of Common Pleas having ordered a judgment for the defendant, the plaintiff excepted to the decision of the court that the defendant was entitled in law to such judgment, and filed his bill of exceptions, which was allowed by the court.

*Benton & Ray*, for the plaintiff.

*George C. Williams*, for the defendant.

FOWLER, J. The auditor's report finds substantially that the plaintiff sold and delivered to the defendant, through his agent, the hay, and rendered for the defendant, through his agent, the services, to recover the value

of which this action is brought, upon an agreement of the defendant, through the same agent, that said hay and services should be paid for in goods from the defendant's store, kept by that agent; that, in pursuance of that agreement, the plaintiff received of the defendant ·goods to a greater amount than the value of the hay and services; but that the defendant, instead of fulfilling his agreement, disregarded the same, sued the plaintiff for the goods, and, though requested so to do by the plaintiff's attorney on the trial of the action, neglected and refused to allow the plaintiff for the hay and services in part payment of the goods, recovered judgment for the whole amount of the goods, and subsequently collected that judgment of the plaintiff. The plaintiff, then, having thus paid the defendant in full, in cash, for the goods, in part payment for which it was agreed by the defendant that his hay and services should be received, now asks that the defendant may be compelled to pay him the sum of $15.68, which the auditor finds to be justly due him for that hay and those services.

The authorities are abundant to show, that the defendant stands in precisely the same situation, in respect to his legal liability in the present case, as he would have done had the agreement in relation to the payment for the hay and services in goods been made directly with the defendant himself. The defendant was bound by the acts and agreements of his agent, within the legitimate scope of his agency; that is to say, under the circumstances disclosed in the auditor's report, he was bound by the acts and agreements of his agent in relation to the occupation, management and control of the store in which he was employed and the sale of goods therefrom. It is wholly immaterial to the defendant's liability to third parties, on what terms and conditions, as between themselves, the business of the defendant was conducted by his agent. Nor does it make any difference that the defendant's

agent appropriated the plaintiff's hay, as well as the proceeds of the defendant's judgment against the plaintiff, to his own use. For aught that appears, it may have been understood and agreed between the defendant and his agent, that the entire proceeds of the business, including everything that could be obtained upon the credit of the principal, should enure to the benefit of the agent. Circumstances seem to indicate such to have been the arrangement, as the auditor finds that the defendant permitted his agent, long after he had forbidden him longer to carry on business in his name, to institute and prosecute to final judgment and execution a suit against the plaintiff, in his name, for a portion of those proceeds, and then to appropriate to his own use the avails of that execution. But this could not exonerate the defendant from liability to fulfill the contracts of his agent, made in his behalf in the regular course of his employment as agent, while openly carrying on business in his name and with his authority, and in relation to the sale of the defendant's goods entrusted to his care for the purpose of being sold. 1 Parsons on Contracts 39; *Webster* v. *Clark*, 30 N. H. 245; Story on Agency, secs. 442, 443, 451; Paley's Agency 343, 345, 593; 2 Kent's Com., sec. 41; *Todd* v. *Emly*, 7 Mees. & Welsb. 427; *Kerns* v. *Piper*, 4 Watts 222; Smith on Merc. Law 56–59, 69; 3 Chitty on Com. and Manf. 202–3; *Mead* v. *Hammond*, 1 Str. 505; *Cary* v. *Webster*, 1 Str. 480.

The question before us is, therefore, to be determined precisely as if the facts were found to be, that the defendant himself, in anticipation of selling goods to the plaintiff, had received of him the hay and the labor, the value of which the plaintiff now seeks to realize, upon his own express agreement that they should afterwards be paid for in goods from his own store; and the plaintiff having subsequently received the goods in pursuance of that agreement, the defendant had neglected and refused to allow

the hay and services in payment therefor, but had compelled the plaintiff to pay him the entire value thereof in cash ; whereupon the plaintiff had brought this action to recover of the defendant pay for his hay and services. Under these circumstances, every principle of justice and fair dealing would seem to require the defendant, who had violated his own express and voluntary agreement in relation to the compensation to be received for his own goods, to pay for the articles originally contracted to be received in payment therefor ; thus, as far as possible, placing the plaintiff in the same condition he would have been in had the defendant fulfilled his undertaking, by refunding to him the money he ought never to have been compelled to pay.

Such, too, is the rule of law, as we understand it, both in this State and elsewhere. The former judgment between the parties forms no bar to the plaintiff's right to recover. The plaintiff's claim was not filed in offset in the former action, and it is not necessary to examine into the merits of the judgment in that suit. The plaintiff is entitled to recover, upon the ground of the sale and delivery of his hay, and the rendition of his services to the defendant. The defendant having failed to allow these items towards payment for his goods, as he had agreed to do, the plaintiff is not only at liberty, but required, it seems to us, in justice to himself and his rights, to treat the contract in relation to the mode of payment for his labor and hay, as rescinded and broken. That contract was executory. The defendant having refused to carry it out, and having taken and enforced his judgment for the entire value of his goods, the plaintiff is thereby released from all obligations under the contract. It would be quite absurd to hold, that, because the plaintiff once agreed to take goods from the defendant's store in payment for his hay and labor, and the defendant afterwards let him have goods to a greater amount, but refused to allow the hay

and labor in part payment therefor, that, therefore, the plaintiff is to utterly lose all compensation for his services and goods. Such a result would give the defendant a premium for violating his own contract, and severely punish the plaintiff for failing to litigate his rights in the former action.

But the doctrine, that money paid upon an executory contract may be reclaimed, and the value of goods sold and delivered and of labor performed under such a contract, may be recovered after the contract has been broken or rescinded by the other party thereto, is now too well settled to need discussion, although, in this State, the early decision of *Tilton* v. *Gordon*, 1 N. H. 33, seemed in conflict with it. The subsequent cases of *Stevens* v. *Lyford*, 7 N. H. 360, decided in 1834, *Little* v. *Fuller*, 7 N. H. 535, decided in 1835, and *Snow* v. *Prescott*, 12 N. H. 535, decided in 1842, the facts in all which, as it seems to us, are not distinguishable in principle from those of the present case, fully and unequivocally recognize the doctrine; and since the publication of the latter decision the rule of law has been regarded as clear, distinct and well established. *Pierce* v. *Duncan*, 22 N. H. 18; *Allen* v. *Webb*, 24 N. H. 278; *Webb* v. *Stone*, 24 N. H. 282; *Warren* v. *Buckminster*, 24 N. H. 336.

As, upon the state of facts found by the auditor, the plaintiff was entitled to judgment on the report of the auditor for the amount found to have been justly due him therein, with interest from the date of that report, the exceptions to the ruling of the court below, directing a judgment for the defendant, must be sustained, and the judgment itself vacated.

*Exceptions sustained.*